J-A09022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RONALD D. OLANDER, JR. :
:
Appellant : No. 705 MDA 2022

Appeal from the Judgment of Sentence Entered April 13, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-SA-0000026-2022

BEFORE: PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.: **FILED: AUGUST 14, 2023**

Appellant, Ronald D. Olander, Jr., appeals *pro se* from the judgment of sentence entered on April 13, 2022, following a trial *de novo* for exceeding maximum speed limits, 75 Pa.C.S.A. § 3362(a)(3). We vacate the judgment of sentence and grant judgment of acquittal.

The trial court briefly set forth the facts of this case as follows:

On November 6, 2021, Corporal [Richard] Wilson, a 20-year veteran of the Susquehanna Township Police Department and [two]-year member of the Traffic Safety Unit, was conducting speed enforcement in the 3500 block of Union Deposit Road. [Corporal] Wilson was using a Robic Accutrac (hereinafter "Accutrac"), stopwatch-like device which[, he testified,] is approved by the Pennsylvania Department of Transportation. [Corporal] Wilson testified that the Accutrac had just been calibrated one day earlier, on November 5, 2021. Upon inquiry by [the trial c]ourt, [Corporal] Wilson explained the operation of the Accutrac as follows:

[T]he Robic Accutrac is basically a stopwatch where we input the distance of the known space. In the 3500 block of Union Deposit Road, we have two white[] lines. Those white lines are measured to be .023 miles apart.

So you enter the distance into the stopwatch and then you hit the start button when the vehicle hits the first line. You hit the same button to stop the time when the vehicle hits the second line, and that will compute the average speed between the two.

So it's basically distance divided by [travel] time [multiplied by] 3600, that's the seconds in an hour, which will give you the miles per hour average.

At around 12:00 p.m., on November 6, 2021, operating the Accutrac as described above, Corporal Wilson clocked a black BMW 3 traveling 74 miles per hour in a 35 mile[] per hour zone. [Corporal] Wilson explained that he could hear and see the vehicle accelerating quickly down the road before he clocked it using the Accutrac and testified that he had an unobstructed view of the two lines on the road that he used as the reference points to start and stop the time on the Accutrac. [Corporal] Wilson also stated that to cut some leeway to the driver, he started the Accutrac timer slightly *before* the vehicle reached the start line and stopped the timer shortly *after* the vehicle had passed the stop line, so that the speed calculated in miles per hour would have been slightly lower than the actual traveling speed of the vehicle. [Corporal] Wilson testified that a citation for traveling 74 miles per hour in a 35 mile[] per hour zone is a significant charge that would carry a possible [license] suspension. Therefore, because he "likes to give breaks where he can," [Corporal] Wilson elected to cite Appellant for traveling 51 miles per hour in a 35 mile[] per hour zone, which carries a less significant penalty.

On cross-examination, Appellant asked Corporal Wilson about the "calibration documents," or [c]ertificate of [a]ccuracy for the Accutrac he used on the day in question. Appellant objected to the fact that during [Corporal] Wilson's testimony, [Corporal] Wilson merely had photocopies of the [c]ertificate of [a]ccuracy, but the Commonwealth had not produced the original certificate of accuracy. Corporal Wilson testified that when each individual Accutrac device goes through the appropriate certification process, the original [c]ertificate of [a]ccuracy for each device is maintained by the Susquehanna Township Police Department's Traffic Safety Unit. [Corporal] Wilson stated that officers carry copies of the [c]ertificate with them so that the original [c]ertificate of [a]ccuracy can be kept at the Department, and there is no risk of losing the official certificate for each Accutrac device. Based on this alleged failure to present the original

- 2 -

[c]ertificate of [a]ccuracy, Appellant moved for dismissal of the charge against him, but [the trial c]ourt denied the motion and accepted the copy of the [c]ertificate of [a]ccuracy.

After the conclusion of Corporal Wilson's testimony, Appellant chose to testify on his own behalf. Appellant testified that he never had a speeding ticket prior to the instant incident and that he is a commercial driver who has driven millions of miles. Appellant testified that[,] in his estimation and based upon pictures he took of the area where he was clocked, Corporal Wilson could not have seen Appellant's vehicle coming from an adequate distance to start the Accutrac timer before Appellant had reached the first line of reference.

Trial Court Opinion, 7/11/2022, at 2-4 (record citations omitted).

On January 28, 2022, a magisterial district judge found Appellant guilty of the aforementioned offense and sentenced Appellant to pay a $57.00 fine and court costs. Appellant appealed that determination. The trial court held a summary appeal hearing on April 13, 2022, wherein the above-mentioned testimony and evidence was presented. By order entered on April 13, 2022, the trial court found Appellant guilty of exceeding maximum speed limits, determining that he had surpassed the posted speed limit by 16 miles per hour. The trial court imposed the same sentence as the magisterial district judge. This timely *pro se* appeal resulted.[1]

On appeal *pro se*, Appellant presents the following issues for our review:

1. Was the [trial c]ourt in error when it found [Appellant] guilty of speeding, 75 Pa.C.S.A. [§] 3362(a)(3), where the

---

[1] Appellant filed a *pro se* notice of appeal on May 10, 2022. On May 23, 2022, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied *pro se* on June 10, 2022. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 11, 2022.

Commonwealth failed to submit into evidence an original certificate of [a]ccuracy for the speed timing device used in the charge against [Appellant], and where the Commonwealth further failed to introduce any competent evidence, independent of the original [c]ertificate of [a]ccuracy, to show that the speed timing device used by the police officer was approved for use by the Pennsylvania Department of Transportation, and further that a testing facility appointed and approved by the Commonwealth, tested the device in accordance with the requirements of 75 Pa.C.S.A. [§] 3368(d) of the [Motor V]ehicle [C]ode?

2. Was the [trial c]ourt in error when it accepted as evidence of the accuracy for the speed timing device used in the charge against [Appellant], a photocopy reproduction of the original [c]ertificate of [a]ccuracy?

3. Was the [trial c]ourt in error when it accepted the testimony of witness for the Commonwealth[, Corporal] Richard B. Wilson in place of the certificates required by the [Pennsylvania] Legislature and Supreme Court preceden[t], and furthermore, was the acceptance of that testimony, the inaccuracies presented, and the erroneous description of the regulations governing electronic speed control device approval, and accuracy testing protocol, a violation of [Appellant's] right to a fair trial?

Appellant's *Pro Se* Brief, at 4-5 (superfluous commentary omitted).

We shall confine our analysis to Appellant's sufficiency challenges, as we find that they are dispositive of the matter. Appellant generally challenges the sufficiency of the evidence to support his conviction for exceeding maximum speed limits. *Id.* at 30-58. More specifically, Appellant argues that the Commonwealth failed to meet its burden of proof because it needed to produce original documents "that the timing device used to measure the speed of [Appellant's] vehicle was [] certified for accuracy, [] approved for use by the Department of Transportation, [and] tested for accuracy at a facility

- 4 -

appointed by the Department of Transportation[.]" ***Id.*** at 31 (superfluous capitalization omitted). Moreover, Appellant asserts that the Commonwealth could not rely on the testimony of Corporal Wilson to make up for its failure to introduce at trial certificates showing the Pennsylvania Department of Transportation ("PennDOT") approval of the speed timing device and the testing station, as required by the relevant statutes and caselaw.

Bound by our prior decision in ***Commonwealth v. Kaufman***, 849 A.2d 1258 (Pa. Super. 2004), we agree with Appellant's contentions. In particular, we agree with his argument that the Commonwealth did not establish, by way of official certificates or through judicial notice, that the Accutrak stopwatch was an approved state speed timing device and that it was properly tested and calibrated at an official testing station.

In ***Kaufman***, a panel of this Court previously determined:

Where the trial court has heard a case *de novo*, we must determine whether the findings of fact are supported by competent evidence or any error of law has occurred. [...Moreover,] when considering a challenge to the sufficiency of the evidence, this [C]ourt must view the evidence presented in a light most favorable to the Commonwealth, the verdict winner, and draw all reasonable inferences therefrom. We must then determine whether the evidence was sufficient to permit the fact-finder to conclude that each and every element of the crimes charged was proven beyond a reasonable doubt. Any question of doubt is for the fact-finder, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

To sustain a conviction for speeding, the Commonwealth must show beyond a reasonable doubt that: (1) an accused was driving in excess of the speed limit; (2) the speed timing device used by the officer was approved by the Department of Transportation;

- 5 -

and (3) the device was calibrated and tested for accuracy within the prescribed time period by a station which has been approved by the department. 75 Pa.C.S.A. § 3362(a) and § 3368(a)-(e); ***Commonwealth v. Kittelberger***, 616 A.2d 1, 3 (Pa. Super. 1992).

\*　　　　\*　　　　\*

This [C]ourt previously set forth the requirements of § 3368(d) in ***Commonwealth v. Gernsheimer***, 419 A.2d 528 (Pa. Super. 1980):

> [I]n prosecuting speeding cases where a radar or other electronic device is used to calibrate a defendant's speed that in order to introduce the results of such into evidence the Commonwealth must offer a *Certificate, certified by the Secretary of Transportation or his designee certifying the agency which performs the tests on the device as an official testing station,* **and** *must introduce a Certificate of Electronic Device (radar) Accuracy into evidence.* The Certificate of Electronic Device (radar) Accuracy must be signed by the person who performed the tests and the engineer in charge of the testing station, must show that the device was accurate when tested by stating the various speeds at which it was tested and the results thereof, and must show, on its face, that the particular device was tested within sixty (60) days of the date it was used to calibrate the particular defendant's speed.

> ***Id.*** at 530 (emphasis added).

***Kaufman***, 849 A.2d at 1259; ***see also*** 75 Pa.C.S.A. § 3362(a)(3) ("[N]o person shall drive a vehicle at a speed in excess of [… a]ny [] maximum speed limit established under this subchapter.").

The ***Kaufman*** Court further recognized that:

> ***Kittelberger*** clearly established the Commonwealth's burden of proof in a speeding prosecution: the accused was driving in excess of the speed limit; the speed timing device used was approved by [PennDOT]; and the device was calibrated and tested for accuracy within the prescribed time period by a station which has been approved by [PennDOT]. While the ***Kittelberger*** court found the

issue of the testing station certification waived, the court stated in a footnote that it agreed with the analysis that the Commonwealth's evidence regarding [PennDOT's] approval of the testing station was insufficient as the trial transcript "[wa]s devoid of any indication that the station which performed the accuracy and calibration tests had been approved by [PennDOT].

***Kaufman***, 849 A.2d at 1260–1261 (citations omitted).

The inclusion within the Pennsylvania Bulletin of PennDot's approval of the speed timing device or the service facility that performs accuracy and calibration tests does not salvage an otherwise deficient trial record. "[The] Commonwealth fail[s] to meet its burden [] when the prosecution d[oes] not request the trial court to take judicial notice of the fact that the approval appeared in the Pennsylvania Bulletin." ***Id.*** at 1261. "It [is] of no import that the approval was actually published, as the court [can]not take judicial notice of something that was neither noticed below nor supported by the evidence." ***Id.*** "There must be at least some reference to the authoritative source for the court to take judicial notice." ***Id.***

Moreover, the ***Kaufman*** Court examined our Court's prior decision in ***Commonwealth v. Denny***, 539 A.2d 814 (Pa. Super. 1987) "wherein the Commonwealth [] introduced a certificate of accuracy but failed to introduce evidence that the issuer of this certificate was a testing station approved by [PennDOT] at the time it tested the device at issue." ***Kaufman***, 849 A.2d at 1260. In ***Kaufman***, we decided that:

> in order for results of a radar device to be properly admissible at trial, the Commonwealth must offer evidence, *independent of the certificate of accuracy*, to show that the testing facility has been [approved] by [PennDOT] as an official testing station pursuant to

- 7 -

the statutory requirements in the Vehicle Code. This independent evidence may consist of either a separate document from the Secretary of Transportation under seal or a citation to the Pennsylvania Bulletin which lists the station as an official testing station.

*Id.* (emphasis in original), *citing* **Denny**, 539 A.2d at 816.

Ultimately, in **Kaufman**, the investigating police officer "testified that on October 21, 2002, he was conducting surveillance of vehicles for speed and was operating a Robic Acutrak." *Id.* at 1260. Therein, we further noted:

> The Commonwealth asked the court to take judicial notice of "Pennsylvania Bulletin, Volume 32, Number 52, dated December 28, 2002, which does indicate that Acutrak is an approved state speed timing device." The Commonwealth, however, failed to demonstrate that the testing station which determined the accuracy of the Acutrak device was also approved by [PennDOT]. In particular, the Commonwealth did not ask the trial court to take judicial notice of the Bulletin for this purpose. At the close of the evidence, [Kaufman] made a motion for judgment of acquittal based on the Commonwealth's failure to present such evidence. The [trial] court denied the motion.
>
> We agree[d] with [Kaufman] that the evidence [wa]s insufficient as the trial transcript [wa]s devoid of any indication that the radar testing station that performed the accuracy and calibration tests had been approved by [PennDOT]. Rather, the Commonwealth only [established] that the radar unit used was of a type approved by the Secretary of Transportation by seeking judicial notice of the contents of the Pennsylvania Bulletin.

*Id.* Moreover, the **Kaufman** Court determined that "**Denny** clearly holds that evidence independent of the [accuracy] certificate itself is necessary to prove that the testing station had been approved by [PennDOT]." *Id.*, *citing* **Denny**, 539 A.2d at 816. We further stated that "[t]here [i]s no need for [an] appellant to object that the certificate of accuracy was not enough to

prove the Commonwealth's burden; rather, it [i]s the Commonwealth's duty to provide this evidence." ***Id.***

Here, the trial court determined there was sufficient evidence to support Appellant's conviction for exceeding maximum speed limits:

> Corporal Wilson, whose view was unobstructed, saw and heard Appellant's vehicle accelerating down the road before he clocked Appellant's vehicle traveling 74 miles per hour in a 35 mile[] per hour zone. [Corporal] Wilson stated that he cited Appellant with exceeding the speed limit by only 16 miles per hour rather than 39 miles per hour because he wanted to ["]cut Appellant a break["] regarding the potential consequences that he faced for his violation. [Corporal] Wilson conveyed that as an additional benefit to Appellant, he started the Accutrac timer slightly before and after the respective reference lines, and, therefore, Appellant's actual speed would have been higher than what the Accutrac clocked. [Corporal] Wilson, a 20-year veteran of the Susquehanna Township Police Department who had been part of the Traffic Safety Unit for [two] years, testified that he had ample experience using the Accutrac speed clocking device, and he provided a detailed explanation to the court as to precisely how the Accutrac is operated. Finally, [Corporal] Wilson testified that the Accutrac had been calibrated just one day prior to Appellant's traffic stop. Taking all this into consideration, the most reasonable conclusion is that Corporal Wilson properly operated the Accutrac, that the Accutrac was properly calibrated, and that Corporal Wilson accurately clocked Appellant's speed as he was traveling between the two lines of reference on the road. Consequently, Appellant's claim of insufficient evidence is without merit.

Trial Court Opinion, 7/11/2022, at 5.

As such, the trial court concluded:

> When asked about the Accutrac certification process, Corporal Wilson testified that when each individual Accutrac device goes through the appropriate certification process, the original certificate of accuracy for each device is maintained by the Susquehanna Township Police Department's Traffic Safety Unit. [Corporal] Wilson stated that the officers carry copies of the certificate with them so that the original certificate can be kept at

- 9 -

the Department, and there is no risk of losing the official certificate for each Accutrac device. [The trial court] found [Corporal] Wilson's representative to be a reasonable explanation as to why he had a copy of the certificate in court rather than the original, and [the trial court] accepted the copy of the certificate as presented. Taking this into consideration, and considering the ample evidence against Appellant[,] it was reasonable for [the trial court] to find that the Commonwealth had no burden to produce the original certificate of accuracy as it pertains to this case, and Appellant has not established that the failure to do so warrants a reversal of his summary conviction.

*Id.* at 6 (unnecessary capitalization omitted; emphasis in original).

Upon review of the certified record and applicable law, we disagree with the trial court's assessment. The trial court does not acknowledge that the Commonwealth failed to introduce a certificate showing that PennDOT approved the speed timing device at issue and, in addition, failed to ask the trial court to take judicial notice of provisions within the Pennsylvania Bulletin in which PennDOT's approval of the device is expressed.

Here, we have previously recognized that the Acutrak device at issue herein is listed in the Pennsylvania Bulletin as an approved timing device. ***See Kaufman***, 849 A.2d at 1260 ("Pennsylvania Bulletin, Volume 32, Number 52, dated December 28, 2002, [] indicate[s] that Acutrak is an approved state speed timing device."). However, in the case *sub judice*, unlike in ***Kaufman***, the Commonwealth neither asked the trial court to take judicial notice of, nor cited directly to, the Pennsylvania Bulletin regarding this fact. As we have previously decided, it is of no import that approval was actually published, as the trial court could not take judicial notice of something that was neither noticed below nor supported by evidence.

- 10 -

Moreover, similar to the facts of **Kaufman**, in this case, even if the Commonwealth had cited the Pennsylvania Bulletin or requested that the trial court take judicial notice that the Acutrak was a **type** of device approved by the Secretary of Transportation, the Commonwealth failed to produce evidence, independent of the certificate of accuracy, to show that the testing facility had been appointed by the Department of Transportation as an official testing station pursuant to the statutory requirements in the Motor Vehicle Code. The Commonwealth neither cited to the Pennsylvania Bulletin nor provided a separate document under seal from PennDOT showing that the device was tested at an official testing station. Thus, the Commonwealth failed to meet its burden of proof. Corporal Wilson's passing reference, without citation to the Pennsylvania Bulletin or upon the Commonwealth's request for judicial notice, that the "speed timing device facility that was used is W56, which is Rabold's Service Station, which is approved" was simply not enough. **See** N.T., 4/13/2022, at 10; **see also Kaufman**, 849 A.2d at 1260 (emphasis in original) ("[I]n order for results of a radar device to be properly admissible at trial, the Commonwealth must offer evidence, *independent of the certificate of accuracy*, to show that the testing facility has been appointed by [PennDOT] as an official testing station pursuant to the statutory requirements in the Vehicle Code. This independent evidence may consist of either a separate document from the Secretary of Transportation under seal or a citation to the Pennsylvania Bulletin which lists the station as an official testing station.").

Accordingly, in sum, we conclude that the Commonwealth failed to meet its burden of proof in two respects. First, the Commonwealth failed to cite the Pennsylvania Bulletin or ask the trial court to take judicial notice that the stopwatch at issue was a statutorily approved speed timing device. Second, the Commonwealth also failed to offer evidence, independent of the copy of the certificate of accuracy, to show that the testing facility at issue was appointed by PennDOT as an official testing station either by providing a separate document from the Secretary of Transportation or by asking the trial court to take judicial notice of the Pennsylvania Bulletin. Additionally, Appellant was not required to object that the certificate of accuracy was not enough to prove the Commonwealth's burden, because it was the Commonwealth's duty to introduce the required certificates of approval. Accordingly, the evidence presented by the Commonwealth was simply not enough to establish that the stopwatch was either an approved state speed timing device or that it was properly tested and calibrated at an official testing station.[2] As the Commonwealth failed to sustain its burden, there was insufficient evidence to support Appellant's conviction. Therefore, bound by our decisions in **Kaufman**, **Kittelberger**, and **Denny**, we conclude that the trial court erred in denying Appellant's motion for judgment of acquittal.

---

[2] As we have determined that the evidence presented by the Commonwealth was insufficient to establish a violation of 75 Pa.C.S.A. § 3362(a)(3), we need not address the issue of whether the Commonwealth is required to introduce original documents as opposed to photocopies.

Judgment of sentence vacated.  Judgment of acquittal granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2023